**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

William Barclay,

      Plaintiff,

v.

Medicine Show Land Trust et al.,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)

No. CV-12-1060-PHX-SMM

**MEMORANDUM OF DECISION AND ORDER**

Before the Court are two motions: Medicine Show Land Trust's, James RedCloud's, and Elizabeth Durham's First Motion for Summary Judgment on All Causes of Action; and Plaintiff's Cross-motion for Partial Summary Judgment. (Docs. 45; 58.) While Defendants' motion is fully briefed (Docs. 45; 58; 63), Plaintiff's motion is not: Defendants responded but Plaintiff did not reply. (Docs. 58; 63.)

**BACKGROUND**

This case arises out of a 2011 motorcycle competition known as the "Hoka Hey Motorcycle Challenge" (the "Challenge"), which was the second of a now annual cross-continent, multi-day endurance race. (Doc. 8 at 1.) The Challenge is owned and organized by Defendant Medicine Show Land Trust (the "Trust"); the Trust was settled by Defendant James G. RedCloud ("RedCloud") and the trustee is Defendant Elizabeth Durham ("Durham"). (Doc. 14 at 2.) RedCloud and Durham are married. (Id.) The 2011 Challenge started at—and was based out of—dismissed Defendant E.B. Chester's ("Chester") Mesa, Arizona Harley Davidson dealership; the Challenge ended at Sydney, Nova Scotia. (Id.)

1    Plaintiff William Barclay ("Barclay") visited the Challenge's offices at Chester's
2 dealership and filled out the paperwork required to participate in the 2011 Challenge. (Doc.
3 60 ¶ 5.) The paperwork was available online and was comprised of three separate documents:
4 an "Entry Application," a "Terms and Conditions," and a "Waiver and Release of Liability"
5 (collectively the "Participation Agreement"). (Docs. 47-2; 47-3; 47-4; 47-5; 60 ¶ 5.) The
6 Participation Agreement was preprinted, standardized, and offered on a take it or leave it
7 basis. (Doc. 60 ¶ 6.) After "review[ing]" the Terms and Conditions and "scann[ing]" the
8 Application and Waiver, Barclay signed all three documents. (Id. ¶ 7.)

9    Barclay was the first entrant to reach the destination within the allotted time in both
10 the 2010 and 2011 Challenges. (Doc. 14 at 2.) One of the Terms and Conditions of both the
11 2010 and 2011 Challenges was that all entrants who reached the destination within the
12 allotted time and without deviating from the prescribed route (the "Contenders") subject
13 themselves to polygraph testing. (Docs. 8 at 8-9; 47-4 at 3.) Barclay was named the winner
14 of the 2010 Challenge following his polygraph examination, and claims that both the
15 polygrapher for his 2011 examination and RedCloud told him that he passed the examination.
16 (Doc. 8 at 9.) RedCloud, Durham, and the Trust deny that Barclay ever passed the polygraph;
17 instead, RedCloud asserts that the polygrapher's assistant informed him that the results of the
18 examination looked favorable but were incomplete, which is the extent of what RedCloud
19 recited to Barclay. (Doc. 14 at 6.) Plaintiff disagreed. (Doc. 8 at 9.)

20    When Barclay arrived at Chester's Mesa Harley dealership for the 2011 Challenge
21 award ceremony, RedCloud informed Barclay that he was ineligible for prize money because
22 Barclay did not pass the polygraph. (Doc. 14 at 6-7.) The reason Barclay did not pass was
23 because the polygrapher concluded Barclay's results were inconclusive as a result of
24 Barclay's employment of dramatically sufficient suppressive countermeasures. (Id. at 7.)
25 After Plaintiff left Chester's dealership, RedCloud told the remaining Contenders that
26 Barclay was a contract pilot for the C.I.A., and that Barclay cheated "his people" and the
27 entrants of the Challenge. (Id.) It is disputed whether RedCloud also told the Contenders: that
28 Barclay passed the polygraph; that Barclay employed countermeasures; and that Barclay

1    cheated in the 2010 and 2011 Challenges. (<u>Compare</u> Doc. 8 at 10, <u>with</u> Doc. 14 at 7.)

2        A little more then seven months later, Barclay filed this action against the Trust,

3    RedCloud, Durham, and Chester alleging contract and tort causes of action and seeking a

4    declaration that he was the winner of the 2011 Challenge. (Docs. 1; 8.) RedCloud, Durham,

5    and the Trust (collectively "Defendants") moved for summary judgment on all causes of

6    action based on a waiver of liability theory. (Doc. 45.) In his response to Defendants' motion,

7    Barclay moved for partial summary judgment against Defendants' waiver of liability defense.

8    (Doc. 58.) Defendants filed a unitary brief that both replied to Barclay's response and

9    responded to Barclay's motion for partial summary judgment (Doc. 63); however, Barclay

10   did not reply to Defendants' response. Finally, Chester filed a motion for summary judgment

11   (Doc. 75), but was subsequently dismissed as a party by stipulation (Doc. 105).

12                      **SUMMARY JUDGMENT STANDARD**

13       "The court shall grant summary judgment if the movant shows that there is no genuine

14   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

15   Fed. R. Civ. P. 56(a). "The substantive law determines which facts are material; only disputes

16   over facts that might affect the outcome of the suit under the governing law properly preclude

17   the entry of summary judgment." <u>Nat'l Ass'n of Optometrists & Opticians v. Harris</u>, 682

18   F.3d 1144, 1147 (9th Cir. 2012) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

19   (1986)). To prevail on a motion for summary judgment, the moving party carries the initial

20   "burden of proving the absence of a genuine issue of material fact." <u>In re Oracle Corp. Sec.</u>

21   <u>Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010). When the non-moving party will bear the burden

22   of proof at trial, the moving party can carry its evidentiary burden by proving the "absence

23   of evidence to support the non-moving party's case." <u>Id.</u> If the moving party meets its

24   burden, "the burden then shifts to the non-moving party to" adduce "evidence from which

25   a jury could reasonably render a verdict in the non-moving party's favor." <u>Id.</u> In determining

26   whether a party has met its burden, the Court views the facts in the light most favorable to

27   the opponent and draws all reasonable inferences in the opponent's favor. <u>Liberty Lobby</u>,

28   477 U.S. at 255.

**DISCUSSION**

**I.    Threshold Matters**

Before analyzing the parties' dispositive motions, the Court must iron out four preliminary wrinkles introduced by the Complaint. The first wrinkle concerns Count 1, which requests the Court declare Barclay the winner of the 2011 Challenge and order Defendants to award him all first place prizes pursuant to both the federal Declaratory Judgment Act and Arizona's Uniform Declaratory Judgments Act. (Doc. 8 at 11.) Under both the federal and state declaratory judgment schemes, a court <u>may</u> declare the legal relations of the parties. 28 U.S.C. § 2201 ("[M]ay declare the rights and other legal relations . . . ."); Ariz. Rev. Stat. ("A.R.S.") § 12-1831 ("[S]hall have power to declare rights, status, and other legal relations . . . ."); A.R.S. § 12-1836 ("The court may refuse to . . . enter a declaratory judgment . . . .").

In <u>Seattle Audubon Soc. v. Moseley</u>, 80 F.3d 1401 (1996) (per curiam), The Ninth Circuit explained:

> A declaratory judgment offers a means by which rights and obligations may be adjudicated in . . . actual controvers[ies] that ha[ve] not reached a stage at which [an interested] party may seek a coercive remedy and in cases where [such] a party . . . could sue for coercive relief [but] has not yet done so.

<u>Id.</u> at 1405. As a consequence, declaratory judgments are "intended to allow earlier access to federal courts in order to spare potential defendants from the threat of impending litigation." <u>Id.</u> Arizona courts take a similar stance: "The declaratory judgment procedure is not designed to furnish an additional remedy where an adequate one exists." <u>Land Dep't v. O'Toole</u>, 154 Ariz. 43, 47, 739 P.2d 1360, 1364 (App. 1987).

In this case, there is no uncertainty about whether Barclay will seek a coercive remedy: he already has. Moreover, the legal relation Barclay asks the Court to declare, "winner of the 2011 Challenge," is cognizable only to the extent that Defendants were contractually obligated under the terms of the Participation Agreement. Count 2 alleges that Defendants were so obligated, but failed to perform. Considering Barclay has an adequate remedy at law, there seems to be little utility in resorting to declaratory judgment, and the Court declines to exercise its discretionary remedial authority.

1    The second wrinkle is that the Complaint does not plead what state's law governs
2  Counts 2 through 8. Federal courts sitting in diversity apply the forum state's choice-of-law
3  rules. Narayan v. EGL, Inc., 616 F.3d 895, 898 (9th Cir. 2010). Arizona's choice of law rules
4  are embodied in the Restatement (Second) of Conflict of Laws (1971) ("Restatement").
5  Wendelken v. Superior Court, 137 Ariz. 455, 456, 671 P.2d 896, 897 (1983) (citing Schwartz
6  v. Schwartz, 103 Ariz. 562, 447 P.2d 254 (1968)). The "general principle" is to apply the law
7  "of the state [with the] most significant relationship" to the claim. Restatement § 6 cmt. c.

8    Counts 2 and 3 (collectively the "Contract claims") allege breach of contract and
9  breach of the duty of good faith and fair dealing, respectively. (Doc. 8 at 11-12.) Under
10  Restatement § 188, the most significant relationship test considers "the place of contracting;
11  the place of negotiation of the contract; the place of performance; the location of the subject
12  matter of the contract; and the domicile, residence, nationality, place of incorporation and
13  place of business of the parties." Cardon v. Cotton Lane Holdings, Inc., 173 Ariz. 203, 208
14  n.5, 841 P.2d 198, 203 n.5 (1992). The contracts at issue were executed in Arizona; Arizona
15  was the place for performance; and the 2011 Challenge started in Arizona.

16    Next, Counts 4 through 8 (collectively the "Tort claims") allege intentional
17  interference with contract, intentional interference with prospective contractual relations,
18  slander, libel, and conspiracy, respectively. (Doc. 8 at 13-16.) Restatement § 145 instructs
19  courts to consider "where the injury occurred, . . . where the conduct causing the injury
20  occurred, . . . the domicile, residence, . . . and place of business of the parties, and . . . where
21  the relationship, if any, between the parties is centered." Pounders v. Enserch E & C, Inc.,
22  232 Ariz. 352, 357, 306 P.3d 9, 14 (2013) (alteration omitted) (quoting Restatement § 145).
23  Based on the allegations in the Complaint, all the allegedly tortious behavior occurred in
24  Arizona; the allegedly defamatory statements were published in Arizona; and, as explained
25  above, the parties' relationship is centered in Arizona. No other state has a more significant
26  relationship to either the Contract Claims or the Tort Claims than does Arizona. Thus, the
27  Court concludes that Arizona Law governs the entirety of the action.
28  / / /

1    The third wrinkle is that Count 7 alleges the tort of libel. (Doc. 8 at 15-16.)
2    "Defamation is composed of libel and slander. Oversimplifying, libel is a written or visual
3    defamation, while slander is an oral defamation." Boswell v. Phoenix Newspapers, 152 Ariz.
4    1, 6 n.4, 730 P.2d 178, 183 n.4 (App. 1985); accord Restatement (Second) of Torts § 568
5    (1977) ("Libel consists of the publication of defamatory matter by written or printed words
6    . . . ."); see Jesik v. Maricopa Cnty. Cmty. Coll. Dist., 125 Ariz. 543, 546, 611 P.2d 547, 550
7    (1980) (explaining that in the absence of contrary authority, Arizona follows the Restatement
8    (Second) of Torts). Barclay never alleges any written defamation; in fact, the only allegedly
9    defamatory communications in Count 7 are "[t]he statements made by Defendant RedCloud
10   at the Contenders Meeting," which were verbal. (Doc. 8 at 15.) Therefore, even if all the
11   allegations in the Complaint are true, Barclay cannot prevail on his libel claim as a matter of
12   law and is not entitled to relief thereon.

13       The fourth and final wrinkle is that Count 8 alleges the tort of conspiracy. (Doc. 8 at
14   16.) However, "Arizona does not recognize the existence of the tort of 'conspiracy.' "
15   Hansen v. Stoll, 130 Ariz. 454, 460, 636 P.2d 1236, 1242 (App. 1981). Rather, "[t]he action
16   is one for damages arising out of the acts committed pursuant to the conspiracy." Tovrea
17   Land & Cattle Co. v. Linsenmeyer, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966). A civil
18   conspiracy "requires that two or more individuals agree and thereupon accomplish 'an
19   underlying [wrongful act] which the alleged conspirators agreed to commit.' " Wells Fargo
20   Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,
21   201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (quoting Baker v. Stewart Title & Trust of
22   Phoenix, 197 Ariz. 535, 545, 5 P.3d 249, 259 (App. 2000)). In such a civil action, the
23   plaintiff's recovery is not for the conspiracy itself, but for the injury caused by the wrongful
24   act. Tovrea Land & Cattle Co., 100 Ariz. at 131, 412 P.2d at 63.

25       Barclay accuses Defendants of acting in concert to wrongfully disqualify him from
26   the 2011 Challenge, and to wrongfully deprive him of future opportunities. Thus, the
27   underlying wrongful acts are intentional interference with contract and intentional
28   interference with prospective contractual relations, which are alleged in Counts 4 and 5,

1    respectively. To the extent that Barclay seeks to recover separately under Count 8 for

2    Defendants' alleged "mere agreement to do [him] wrong," he did not state a cognizable claim

3    for relief. Wells Fargo, 201 Ariz. at 498, 38 P.3d at 36 (quoting Baker, 197 Ariz. at 542, 5

4    P.3d at 256).

5           The Court intends to sua sponte dismiss Barclay's libel and conspiracy claims under

6    Federal Rule of Civil Procedure 12(b)(6): the libel claim is legally insufficient because

7    Barclay does not allege any visual or written defamation; the conspiracy claim is not a claim

8    upon which Barclay can be granted relief. See UMG Recordings, Inc. v. Shelter Capital

9    Partners LLC, 718 F.3d 1006, 1014 (9th Cir. 2013) (alteration omitted) (quoting Balistreri

10   v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)) ("Dismissal can be based on the

11   lack of a cognizable legal theory or the absence of sufficient facts alleged."); Hunt v. County

12   of Orange, 672 F.3d 606, 617 (9th Cir. 2012) (quoting Trujillo v. Crescent Jewelers, 243 F.3d

13   550 (9th Cir. 2000)) ("Federal courts may, in fact, dismiss sua sponte pursuant to F.R.C.P.

14   12(b)(6) when it is clear that the plaintiff has not stated a claim upon which relief may be

15   granted."). The Court is mindful of its obligation to provide Barclay both notice and an

16   opportunity to submit a written memorandum in opposition to dismissal. See Lee v. City of

17   Los Angeles, 250 F.3d 668, 683 n.7 (9th Cir. 2001). This Order satisfies the notice

18   requirement. If Barclay believes the dismissal or underlying analysis is erroneous, he may

19   file a motion for reconsideration, which satisfies the opportunity to be heard requirement.

20   Having smoothed the landscape, the Court shifts its focus to the parties' dispositive motions.

21   **II.    Cross-motions for Summary Judgment**

22          Defendants move the Court to grant them summary judgment on all of Barclay's

23   claims based the Waiver and Release of Liability (the "Waiver"). Paragraph four of the

24   Waiver is titled "Release of Liability," and states:

25          In consideration for being permitted to participate in the Event, I hereby waive,
            release, and forever discharge, for myself, my heirs, executors, administrators and
26          legal representatives, any and all rights and/or claims which I have, may have, or may
            hereafter accrue to me against the Organizer, its officers, directors, employees,
27          consultants, agents and event sponsors for any and all damages, injuries (including
            death), and/or claims which may be sustained by me or my vehicle directly or
28          indirectly arising out of my participation in the Event (including the application of

- 7 -

1   emergency or medical services at the Event) even if the damages, injuries (including
2   death), and/or claims are caused by the negligence of those persons listed above or
    otherwise. Further, I covenant not to sue the Organizer, its officers, directors,
3   employees, consultants, agents and Event sponsors for any and all damages, injuries
    (including death), and/or claims which may be sustained by me directly or indirectly
4   arising out of my participation in the Event. This release and discharge includes, but
    is not limited to, claims for personal injury, death, property damage, economic loss,
5   breach of contract, lost wages, contribution indemnity, indemnity, punitive damages,
    negligence, or any other legally recognizable claim arising out of my participation in
6   the Event (including all legal costs associated with such claims).

7   (Doc. 47-5 at 3-4.) Barclay argues that the Waiver is void because it contravenes public

8   policy, is unconscionable, and violates the reasonable-expectations doctrine. Unfortunately,

9   the parties' motions argue about the waiver in its entirety rather than its validity and

10  enforceability with respect to individual claims. Thus, the Court proceeds by applying the

11  parties' arguments to Barclay's five remaining claims.

12              **A.    Substantive Legal Standards**

13          The issue before the Court can be broadly framed as whether and to what extent

14  parties can contractually limit remedies for contract and tort actions arising from that

15  underlying contract. Since contracts that contravene public policy are void, S. H. Kress &

16  Co. v. Evans, 21 Ariz. 442, 449, 189 P. 625, 627 (1920); e.g., Liberty Mut. Fire Ins. Co. v.

17  Mandile, 192 Ariz. 216, 220, 963 P.2d 295, 299 (App. 1997) (finding provision of insurance

18  contract void as against public policy), the different policies that underlie contract and tort

19  law guides the Court's analysis. In determining whether a provision is void as against public

20  policy, "courts balance the interest in enforcing the provision against the public policy

21  interest that opposes enforcement." 1800 Ocotillo, LLC v. WLB Grp., Inc., 219 Ariz. 200,

22  202, 196 P.3d 222, 224 (2008) (citing Restatement (Second) of Contracts § 178 (1981)).

23  Weighing the "public policy interest generally focuses on the extent to which enforcement

24  of the term would be injurious to the public welfare." Id.

25          Contract law "seeks to preserve freedom of contract and to promote the free flow of

26  commerce. These goals are best served by allowing the parties to specify the consequences

27  of a breach of their agreement." Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance,

28  Inc., 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010) (citation omitted) (citing Salt River

1  Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp., ("SRP") 143 Ariz. 368, 376,

2  694 P.2d 198, 206 (1984), abrogated on other grounds by Phelps v. Firebird Raceway, Inc.,

3  210 Ariz. 403, 111 P.3d 1003 (2005)). Thus, "parties to a contract may specify certain

4  remedies which may be used in case of breach. They may in addition make such a provision

5  the exclusive remedy or remedies, barring all others which would otherwise be available."

6  Zancanaro v. Cross, 85 Ariz. 394, 399, 339 P.2d 746, 750 (1959).

7        "[T]he basic policies underlying tort law [are] to deter wrongful conduct and

8  compensate victims." Jackson v. Chandler, 204 Ariz. 135, 137, 61 P.3d 17, 19 (2003)

9  (quoting DeLoach v. Alfred, 192 Ariz. 28, 33, 960 P.2d 628, 633 (1998)). Another

10  "underlying principle[] of [Arizona's] system of tort law [is] the prevention of future harm."

11  Diggs v. Ariz. Cardiologists, Ltd., 198 Ariz. 198, 202, 8 P.3d 386, 390 (App. 2000). At the

12  intersection of contract and tort, a plaintiff may contractually "accept a risk of harm arising

13  from the defendant's negligen[ce]." Restatement (Second) of Torts § 496B. As a result,

14  "Arizona allows parties to agree in advance that one party shall not be liable to the other for

15  negligence." Benjamin v. Gear Roller Hockey Equip., Inc., 198 Ariz. 462, 464, 11 P.3d 421,

16  423 (App. 2000), abrogated on other grounds by Phelps, 210 Ariz. at 403, 111 P.3d at 1003.

17  Such arrangements—broadly termed "assumptions of risk"—are disfavored by Arizona

18  courts "out of concern that they may encourage carelessness," id. (citing SRP, 143 Ariz. at

19  382, 694 P.2d at 212), and are enforced only if it is shown that the terms of the contract were

20  brought home to and understood by the party waiving recovery. Restatement (Second) of

21  Torts § 496B cmt. c. Regardless, assumptions of risk are "question[s] of fact for the jury 'in

22  all cases whatsoever' and 'at all times.' " Phelps, 210 Ariz. at 413, 111 P.3d at 1013 (quoting

23  Ariz. Const. art 18, § 5).

24        However, freedom to contract is not unlimited. Courts may refuse to enforce all or

25  part of an otherwise valid contract if it is unconscionable. A.R.S. § 47-2302(A). Courts may

26  also limit enforcement of standardized contracts under the reasonable-expectations doctrine,

27  which provides that a party signing a preprinted contract prepared by the other party is "not

28  bound to unknown terms which are beyond the range of reasonable expectation." Darner

Motor Sales v. Universal Underwriters Ins. Co., 140 Ariz. 383, 391, 682 P.2d 388, 396 (Ariz. 1984) (quoting Restatement (Second) of Contracts § 211 cmt. f).

**B.    Analysis**

Tort Claims

The Court will deny Defendants' motion for summary judgment as to Barclay's Tort Claims because the Arizona Constitution requires any contractual assumption of risk, express or implied, to be resolved at trial. See Phelps, 210 Ariz. at 413, 111 P.3d at 1013. Defendants argue that the affirmative defense of assumption of risk for purposes of the Arizona Constitution is limited to negligence and does not apply to intentional torts. However, the term "assumption of risk" is broadly applied to any contract in which the plaintiff "agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm," expressly or impliedly, regardless of nomenclature. Phelps, 210 Ariz. at 405, 111 P.3d at 1005 (quoting Restatement (Second) of Torts § 496(B)).

The Waiver attempts to immunize Defendants from "any and all damages, injuries . . . , and/or claims . . . sustained by [Barclay] . . . directly or indirectly arising out of his participation in the [2011 Challenge]," and the torts allegedly suffered by Barclay arose out of his participation in the Challenge. Thus, the Waiver is an assumption of risk. Arizona's Constitution provides that "[t]he defense . . . of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." Ariz. Const. art 18, § 5. Defendants' argument that Article 18, Section 5 only applies to some cases and some of the time is foreclosed upon by the provision's plain meaning.

Moreover, even if Defendants were right, a party's purported exemption "from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy." Restatement (Second) Contracts § 195; see Airfreight Express. Ltd v. Evergreen Air Ctr., Inc., 215 Ariz. 103, 111, 158 P.3d 232, 240 (App. 2007) (explaining § 195 "prohibits contracts exempting parties from intentional or reckless tort liability"); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 68 at 484 (5th ed. 1984) ("[O]n the basis . . . of public policy to discourage aggravated wrongs, [express assumptions of risk] generally

1    are not construed to cover . . . any conduct which constitutes an intentional tort."); see also

2    8 Williston on Contracts § 19:24 (4th ed. 1998) ("An attempted exemption from liability for

3    a future intentional tort . . . is generally held void.").

4    Defendants alternatively argue that the "Court need not concern itself that enforcing

5    [the Waiver] will encourage 'carelessness.' " (Doc. 45 at 10.) The public does not seek to

6    prevent carelessness by not enforcing assumptions of risk for intentional torts, but seeks to

7    protect the integrity of mind, body, and property from willful and aggravated wrongs. That

8    interest is more weighty than the prevention of carelessness and is sufficient for the Court

9    to find the Waiver void as against public policy with respect to the two intentional torts at

10   issue: intentional interference with contract and intentional interference with prospective

11   contractual relations. Thus, the Court will grant Barclay summary judgment that the Waiver

12   is void as against public policy with respect to Counts 3 and 4.

13   Slander, on the other hand, can be committed negligently or maliciously—meaning

14   recklessly or knowingly—depending on whether the plaintiff is a public or private person

15   and whether the matter is one of public concern. Dombey v. Phoenix Newspapers, Inc., 150

16   Ariz. 476, 480-81, 724 P.2d 562, 566-67 (1986). A defendant is liable for defaming a non-

17   public plaintiff if he or she "publishes a false and defamatory communication" in relation to

18   a private matter and negligently failed to ascertain the falsity of such communication. Dube

19   v. Likins, 216 Ariz. 406, 417, 167 P.3d 93, 104 (App. 2007) (quoting Restatement (Second)

20   of Torts § 580(B)). Thus, depending on the circumstances, slander can be a negligent tort.

21   Barclay is not a public person because he had not " 'purposeful[ly] . . . thrust[]' . . .

22   [himself] into matters of public controversy," nor was he "close[ly] involve[d] with the

23   resolution of matters of public concern." Dombey, 150 Ariz. at 483, 724 P.2d at 569 (quoting

24   Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc., 130

25   Ariz. 523, 527, 637 P.2d 733, 737 (1981)). Next, the allegedly defamatory statements at issue

26   do not constitute matters of public concern. See Snyder v. Phelps, 131 S. Ct. 1207, 1216

27   (2011) (explaining that heightened First Amendment protections do not extend to matters that

28   cannot "be fairly considered as relating to any matter of political, social, or other concern to

1   the community"). Although the parties did not brief which level of fault is controlling, the

2   Court concludes that it is negligence. As "Arizona allows parties to agree in advance that one

3   party shall not be liable to the other for negligence," <u>Benjamin</u>, 198 Ariz. at 464, 11 P.3d at

4   423, the Waiver is not void as against public policy with respect to slander.

5       Barclay alternatively contends that the Waiver is unenforceable because it is adhesive

6   and the effect of its terms are outside the scope of his reasonable expectations. However, the

7   fact that a contract is "adhesi[ve] is not, of itself, determinative of its enforceability."

8   <u>Broemmer v. Abortion Services of Phoenix, Ltd.</u>, 173 Ariz. 148, 151, 840 P.2d 1013, 1016

9   (1992). "To determine whether [a] contract of adhesion is enforceable, [Arizona courts] look

10  to two factors: the reasonable expectations of the adhering party and whether the contract is

11  unconscionable." <u>Id.</u> The reasonable-expectations doctrine is guided by seven factors to

12  "determin[e] whether [a] clause . . . either violates the adhering parties' reasonable

13  expectations or creates a fact question requiring submission to a finder of fact." <u>Harrington</u>

14  <u>v. Pulte Home Corp.</u>, 211 Ariz. 241, 248, 119 P.3d 1044, 1051 (App. 2005). The factors

15  consider (1) prior negotiations; (2) circumstances; (3) oppressive terms; (4) internally

16  inconsistent terms; (5) terms contrary to the dominant purpose; (6) clarity of terms; and (7)

17  other relevant facts, <u>viz.</u>, whether the party seeking to invoke the doctrine would have

18  otherwise entered the contract. <u>Darner</u>, 140 Ariz. at 392-94, 682 P.2d at 397-99.

19      As to factors one and two, there are no relevant facts or inferences to be drawn to

20  suggest that Barclay believed that he would or would not be precluded from bringing a

21  negligence action. With regard to factor three, Barclay argues the Waiver is oppressive in its

22  entirety, but the Court disagrees to the extent that it immunizes Defendants from negligence

23  liability. As to factors four and five, all of the Waiver's terms are consistent with one another

24  and with the dominant purpose of the transaction: limiting Defendants' liability to

25  participants of the 2011 Challenge.

26      Regarding factor six, Barclay argues the Waiver is not understandable because its

27  terms are "highly ambiguous" since the first two provisions of the Waiver discuss "risks

28  associated with participation." So Barclay's argument goes, "it is reasonable to read the

1  entirety of the document as relating to those same risks and thus limited to those risks." In

2  other words, Barclay's argument is not that a word or term is susceptible of more than one

3  reasonable construction, but that the first two provisions invalidate the plain meaning of the

4  other eight provisions. That is not ambiguity. See Cardon, 173 Ariz. at 207, 841 P.2d at 202

5  (citation and alteration omitted) (quoting Phillips v. Flowing Wells Unified School Dist., 137

6  Ariz. 192, 193, 669 P.2d 969, 970 (App.1983)) ("A contract must be construed in its entirety

7  and in such a way that every part is given effect. 'Language used in a contract is ambiguous

8  only when it can reasonably be construed to have more than one meaning.' "). The terms of

9  the Waiver are easily understandable, especially if Barclay "attempt[ed] to check on his

10 rights," which is the focus of the factor six. Darner, 140 Ariz. at 394, 682 P.2d at 399.

11     Finally, factor seven focuses on the latent rationale of the reasonable-expectations

12 doctrine: would the adhering party have entered the contract if they had they known of the

13 purportedly unreasonable term? In an affidavit attached to his cross-motion for partial

14 summary judgment, Barclay does not claim that he did not know the exculpatory provisions

15 were present, nor does he claim that he would not have signed the Waiver had he been aware.

16     Considering all the factors, the Court concludes that the reasonable-expectations

17 doctrine does not prevent Barclay from assuming the risk of Defendants' negligent slander.

18 Whether the scope of the Waiver actually includes such negligence is a question of fact for

19 the jury. See Phelps, 210 Ariz. at 413, 111 P.3d at 1013 ("[T]here will almost always be

20 factual questions about the scope of an express contractual assumption of risk or whether a

21 plaintiff understood its terms.") Barclay's remaining argument on the issue,

22 unconscionability, fails as to substance because assumptions of risk for negligence are

23 permissible, and as to procedure because Barclay only alleges that the Waiver is adhesive.

24 Thus, the Court will deny Barclay summary judgment on Defendants' assumption of risk

25 defense as to slander.

26     Contract Claims

27     The Court will deny Defendants summary judgment as to Barclay's Contract Claims.

28 It is true that courts will enforce contractual restrictions on remedies for breach, but "[t]o

1    obtain this result, . . . the intent of the parties must be made clear." <u>Zancanaro</u>, 85 Ariz. at

2    399, 339 P.2d at 750. Even assuming that Defendants proved the absence of a genuine issue,

3    Barclay's averment that he "did not think that Defendants would be released from their

4    obligation to" perform (Doc. 60 ¶ 9), is "evidence from which a jury could reasonably render

5    a verdict in" Barclay's favor, <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d at 387. As there is a

6    genuine dispute over the intent of the parties, summary judgment for Defendants as to the

7    Contract Claims is inappropriate.

8         Shifting to Barclay's cross-motion, he argues that the Waiver is void in as much as

9    it would leave him without recourse for Defendants' failure to perform under the

10   Participation Agreement. The Court agrees. Enforcing the Waiver as to the Contract Claims

11   would mean that Barclay would have no remedy whatsoever if Defendants failed to perform,

12   and that Defendants would have absolute discretion in deciding whether or not to perform

13   at all. "As a matter of public policy, a party should not benefit from a bargain it performed

14   in bad faith." <u>Airfreight Express. Ltd.</u>, 215 Ariz. at 111, 158 P.3d at 240; <u>accord</u> 15 Grace

15   McLane Giesel, <u>Corbin on Contracts</u> § 83.7, at 287 (Joseph M. Perillo, ed. 2003) ("[C]ourts

16   have long looked askance at liability limitations if the limitation applied to knowing or bad

17   faith breaches of contract."). The interest in enforcing the Waiver as to the Contract Claims,

18   <u>viz.</u>, freedom of contract, is outweighed by the public's interest in affording a performing

19   party some remedy against a non-performing party. If the Waiver afforded Barclay any

20   remedy at all, then the question would be one of the parties' intent, but that is not the case

21   here. Since an attempt to preclude a party from any and all remedy for breach of contract is

22   void as against public policy, the Court will grant Barclay summary judgment on

23   Defendants' waiver defense as to the Contract Claims.

24        Accordingly,

25        **IT IS HEREBY ORDERED dismissing** Counts 1, 7, and 8 of the Complaint

26   pursuant to Federal Rule of Civil Procedure 12(b)(6).

27        **IT IS FURTHER ORDERED denying** Defendants' First Motion for Summary

28   Judgment on All Causes of Action. (Doc. 45.)

- 14 -

1      **IT IS FURTHER ORDERED granting in part** Barclay's Cross-motion for Partial

2  Summary Judgment that the Waiver is void as against public policy with respect to Counts

3  2, 3, 4, and 5. (Doc. 58.)

4      **IT IS FURTHER ORDERED denying in part** Barclay's Cross-motion for Partial

5  Summary Judgment in all other respects.

6      **IT IS FURTHER ORDERED denying as moot** Chester's Motion for Summary

7  Judgment (Doc. 75), Because Chester was dismissed as a party by stipulation (Doc. 105).

8      DATED this 19th day of February, 2014.

Stephen M. McNamee
Senior United States District Judge

- 15 -